IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANNAH's BOUTIQUE, INC., an Illinois corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) No. 13 C 2564 |
| BARBARA ANN SURDEJ, ROY SURDEJ and JEFFREY SURDEDJ d/b/a PEACHES BOUTIQUE, and AGNIESZKA BIALAS. | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On April 5, 2013, Plaintiff Hannah's Boutique, Inc. ("Hannah's") filed a twelve-count Complaint against Defendants Barbara Ann Surdej, Roy Surdej, and Jeffery Surdej d/b/a Peaches Boutique (collectively, "Peaches"), and Agnieszka Bialas (collectively, "Defendants"). (R. 1, Compl.) Defendants move to dismiss, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Counts I-VI of the Complaint which allege the following: Count I – Violation of Section 2 of the Sherman Act: Attempted Monopolization; Count II – Violation of Section 2 of the Sherman Act: Conspiracy to Monopolize; Count III – Violation of Section 2 of the Sherman Act: Monopolization; Count IV – Violation of Section 1 of the Sherman Act: Concerted Refusal to Deal; Count V – Violation of Section 1 of the Sherman Act: Unreasonable Restraint of Trade; Count VI – Violation of Section 3 of the Clayton Act: Sale on Agreement Not to Use Goods of Competitor. (R. 19, Mot.) Defendants also seek to dismiss the state law counts (Counts VII-

1

XIII) pursuant to 12(b)(1) for lack of federal court subject matter jurisdiction. (*Id*.) For the following reasons, the Court dismisses Defendants' motion to dismiss.

## BACKGROUND

Hannah's alleges the following facts, which the Court must accept as true for purposes of this motion.

Hannah's Boutique, Inc. is an Illinois corporation which sells prom, homecoming, and evening dress apparel. (Compl. ¶ 12.) Peaches Boutique is "one of the largest retail suppliers of prom, homecoming, and even dress apparel in the Chicago market." (*Id*. ¶ 11.) Peaches also has a website "for the purposes of selling prom dresses and evening apparel across the entire United States and internationally." (*Id. ¶* 17.) Defendants Barbara Ann Surdej, Roy Surdej, and Jeffrey Surdej are each principals of Peaches Boutique and are "actively engaged in its day-to-day operation and management." (*Id*. ¶¶ 13-15.) Defendant Agnieszka Bialas has been the acting manager at Peaches since 2000. (*Id*. ¶ 16.)

In the prom, homecoming, and evening dress apparel industry, "retailers' relationships with, and access to, the top designers are crucial in maintaining a competitive position in the market as the consumers demand the latest fashions." (*Id. ¶* 48.) Peaches has relationships with numerous women's fashion dress designers and "dominates" the Chicago Market.[1] (*Id. ¶¶* 17, 49.) Hannah's, which entered the Chicago Market in February 2009, "had started to establish a presence in the prom, homecoming and evening dress apparel industry by 2012 due to its reputable service, relationships with certain [d]esigners and ability to obtain the most recent

---

[1] Hannah's defines the Chicago Market as northern Illinois, northwestern Illinois, and southern Wisconsin. (*Id. ¶* 51.)

fashion."² (*Id*. ¶¶ 48, 52.) Based on this success, Hannah's moved to a new, larger facility in September 2011. (*Id*. ¶ 56.)

After Peaches learned that Hannah's was expanding, it began contacting various dress designers to stop them from selling dresses to Hannah's and spoke with certain designers at the 2011 National Bridal Market. (*Id*. ¶ 57.) Peaches threatened to stop placing orders with designers if they sold to Hannah's. (*Id*. ¶ 60.) Certain designers began to reduce Hannah's access to their products and services. (*Id*. ¶ 61.)

Peaches directed other designers to cease doing business with Hannah's at the 2012 Atlanta AmericasMart Prom Market in August 2012. (*Id*. ¶¶ 63-64.) Specifically, "Peaches instructed the dress designers . . . to remove Hannah's from their websites, to stop providing prom dress catalogs and website dress images women's fashion dresses to Hannah's, and to reject Hannah's dress orders." (*Id*. ¶ 64.) Beginning September 5, 2012, certain designers informed Hannah's that they could no longer fill Hannah's orders and removed Hannah's from their websites. (*Id*. ¶¶ 65-67.)

At the 2012 National Bridal Market, Peaches again spoke with designers and ordered them to stop selling to Hannah's. (*Id*. ¶¶ 68-70.) At that market and in the subsequent months, designers informed Hannah's that they would stop selling dresses to Hannah's, or planned to continue to refuse to sell to Hannah's. (*Id*. ¶¶ 71-76.) Because these designers refused to fill Hannah's' orders, Hannah's had to order dresses from retailers in other states, thereby paying full retail prices rather than distributor prices. (*Id*. ¶ 79.)

---

² Hannah's specifically names thirteen designers relevant to its Complaint.

According to Hannah's, Peaches interfered with Hannah's' business relationships in other ways by trespassing on its property, obtaining shipping information from United Parcel Service regarding Hannah's' package deliveries, and surveilling Hannah's' facility and representatives. (*Id.* ¶ 80.) Peaches also made false statements about Hannah's to its current and potential customers, including the following:

> (a) that Hannah's is illegally selling women's fashion dresses;
>
> (b) that Hannah's is selling "knockoff" or counterfeit designer women's fashion dresses;
>
> (c) that Hannah's is owned, managed and operated by Muslims and that "you don't want to buy anything from those people" because you do not known what they are involved in and "they barbeque goats in the parking lot"; and
>
> (d) that Hannah's has concealed cameras in it dressing rooms to view customers changing into and out of dresses.

(*Id.* ¶ 81.) Peaches also made a false complaint to the Palos Park Police that Hannah's had installed cameras in its changing rooms to record women changing clothes. (*Id.* ¶ 85.)

Peaches has targeted other fashion dress retailers in the Chicago Market "causing these other retailers to lose customers, business and profits or be required to shut its doors." (*Id.* ¶ 93.) Because of Peaches' anticompetitive behavior, "Peaches has been able to greatly inflate dress prices to consumers by as much as 200-250%." (*Id.* ¶ 45.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must

4

"give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## ANALYSIS

**I.  12(b)(6) Motion**

Rather than addressing particular deficiencies in Counts I-VI, Defendants offer one universal argument for why these counts do not sufficiently state a claim for relief. Specifically, Defendants argue that Hannah's has failed to sufficiently allege an antitrust injury "to competition as a whole," in part because it has not alleged any market share sufficient to support a credible threat of a monopoly. (*Id*. at 3, 8.) The Court disagrees.

To succeed under Section 1 of the Sherman Act, a plaintiff must prove: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334-35 (7th Cir. 2012). Similarly, a company is "guilty of monopolization under [Section] 2 if the plaintiff proves (1) the possession of monopoly power in the relevant market[,] (2) the willful

5

acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident," and (3) "the monopolization caused injury." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1438, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013). To prove attempted monopolization, Hannah's must show (1) "[Peaches'] specific intent to achieve monopoly power in a relevant market; (2) predatory or anticompetitive conduct directed to accomplishing this purpose; and (3) a dangerous probability that the attempt at monopolization will succeed." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 854 (7th Cir. 2011). As noted above, Defendants do not contest all of the elements of Hannah's claims, but merely argue that Hannah's has not alleged an injury to the relevant market or monopoly power in the relevant market.

As Defendants note, Hannah's has defined the relevant product market as women's prom, homecoming, and evening dress apparel, and the relevant geographic market as the Chicago Market – northern Illinois, northwestern Illinois, and southern Wisconsin. (Mot. at 2-3 (citing Compl.¶ 1).) Defendants argue that Hannah's needed to allege the size of this market or Peaches' market share. (*Id*. at 10.) Defendants, however, do not cite any case requiring a plaintiff to allege a specific market size or percentage market share. Furthermore, at the pleading stage, *Twombly* merely requires that a plaintiff state a plausible claim for relief; a plaintiff need not assert all facts sufficient to prove its case, which is the standard which Defendants seem to force upon Hannah's here. *See Twombly,* 550 U.S. at 570; *see also Morrison v. YTB Intern., Inc.*, 649 F.3d 533, 537 (7th Cir. 2011) ("Complaints need not do more than narrate a plausible claim for relief. Plaintiffs may not be able to prove what they allege."). Moreover, Hannah's did allege that Peaches has "market power" and a "monopoly position" in the relevant market and

6

"currently dominates the prom, homecoming and evening dress apparel market in the Chicago Market." (Compl. ¶¶ 10, 49, 96, 99.) Hannah's also provided factual allegations to support these conclusions, including that Peaches caused prices in the relevant market to rise significantly. *See, e.g., Sheridan v. Marathon Petroleum Co*., 530 F.3d 590, 594 (7th Cir. 2008) ("a seller who has a large market share may be able to charge a price persistently above the competitive level despite the existence of competitors"); *contra Endsley v. City of Chicago,* 230 F.3d 276, 282 (7th Cir. 2000) (stating that if a plaintiff "fail[s] to identify any facts from which the court can infer that defendants had sufficient market power to have been able to create a monopoly, [its] §2 claim may be properly dismissed").

Indeed, Hannah's has offered numerous specific allegations supporting its contention that Defendants had sufficient market power to produce anticompetitive effects in the relevant market. Notably, Hannah's provided allegations of anticompetitive conduct towards Hannah's as well as towards other prom and homecoming dress retailers in the Chicago market. (Compl ¶¶ 80-94.) Specifically, Hannah's has alleged that:

- Peaches has been able to greatly inflate dress prices to consumers by as much as 200-250% (Compl. ¶ 45);

- Peaches ordered thirteen designers to cease doing business with Hannah's, including at the 2011 National Bridal Market Chicago in September 2011, the 2012 Atlanta AmericasMart Prom Market in August 2012, and the 2012 National Bridal Market Chicago in September and October 2012 (Compl. ¶¶ 58-76);

- Peaches made specific false statements to Hannah's current and prospective clients (Compl. ¶ 81);

- Peaches contacted several designers and falsely told them that Hannha's was illegally selling those designers' dresses or selling "knockoffs" with the designers' names (Compl. ¶ 83);

- Peaches obtained shipping information for Hannah's packages and contacted the senders and recipients and told them to cease transaction business with Hannah's (Compl. ¶ 84);

- Peaches made false accusations about Hannah's to the Palos Park Police Department (Compl. ¶ 85);

- Peaches has entered into agreements with certain designers "to refuse to deal with any retail dress shop that Peaches believes are competitors to Peaches' business" (Compl. ¶ 87); and

- Peaches anticompetitive practices resulted in the shutdown of five specifically named businesses who previously sold prom, homecoming and evening dress apparel (Compl. ¶¶ 88-92).

These are specific allegations of particular conduct by Peaches – which resulted in alleged harm to Hannah's and other retailers in the relevant market, including increased prices and business closings – rather than mere conclusory allegations as Peaches contends. As a result, Hannah's has not only defined the relevant commercial market, but has provided factual allegations of Peaches' anticompetitive conduct and effect on that market. These actions and injuries are "of the type the antitrust laws were intended to prevent and 'reflect the anticompetitive effect of either the violation or of anticompetitive acts made possible by the violation." *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716 (7th Cir. 2006).

Additionally, although Defendants vaguely reference the concept of "antitrust standing," they neither develop an argument regarding standing, nor establish that Hannah's lacks sufficient "antitrust standing" to pursue its claim. (Mot. at 6-7.) Indeed, Defendants have not claimed that Hannah's is not the party "who can most effectively vindicate the purposes of the antitrust laws." *Kochert*, 463 F.3d at 716. Furthermore, Hannah's also has alleged conduct that affects the relevant market as a whole – such a raising prices and forcing competitors out of the market – rather than just injury to itself. *See Rubloff Devlp. Grp., Inc. v. SuperValu, Inc*., 863 F.Supp.2d

732, 741 (N.D. Ill. 2012) ("Antitrust actions require that Plaintiffs allege an injury to the *public,* not just themselves."). Hannah's allegations, when viewed in the light most favorable to it, are sufficiently direct and nonspeculative to state a claim. *See, e.g., Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993) (stating that a plaintiff "does not have standing to sue . . . if [its] injuries were indirect and speculative").

Defendants also argue that Hannah's did not sufficiently allege that the dresses at issue are not interchangeable with other similar products, referencing a case from the Southern District of New York where the court noted that the plaintiff did not explain why afghans were not interchangeable with quilts, spreads, blankets, and comforters and instead constituted their own market. (Mot. at 11.) Defendants also make blanket, unsupported statements such as "if Peaches was selling at supracompetitive prices, certainly customers could find interchangeable designers and retailers, and other competitors would enter the market." (Mot. at 12.) Viewing the facts in the light most favorable to Hannah's, however, the Court concludes that homecoming and prom dresses and related apparel are sufficiently unique, and not interchangeable with other types of dresses or apparel. *See, e.g., Rubloff ,* 863 F. Supp. 2d at 741 (finding that the plaintiff sufficiently stated an anticompetitive injury to the grocery store market in part because retention of a high market share allowed it to raise grocery prices). Indeed, the relevant market here is also particularly narrow – lacking interchangability – because it relates to dresses obtained from particular designers.[3] The crux of the allegations here, therefore, relate to Peaches' conduct regarding specific designers. Hannah's' allegations are sufficient to survive a motion to dismiss.

---

[3] Notably, Defendants argue that it does not make sense that Peaches could have market power because if it was charging 200-250% higher prices than other retailer, those consumers would buy from other retailers. (R. 29, Reply at 5.) This comment supports Hannah's contention which is that *because* Peaches has caused the other retailers to go out of business and has stifled completion, consumers do not have other options.

9

Notably, Defendants also offer factual allegations – without any support – in an attempt to rebut Hannah's allegations. Defendants state, for example, that Peaches is a family owned and run business with "less than one-tenth of one percent" share of the Chicago market. (Mot. at 11.) At the motion to dismiss stage, however, the Court must take all facts which Hannah's has pled as true, and make all reasonable inferences in its favor. *See, e.g., D.B. ex rel. Kurtis B. v. Kopp*, No. 12–2818, 2013 WL 3957576, at *1 (7th Cir. Aug. 2, 2013). Defendants cannot defeat Hannah's' allegations by merely offering unsupported factual allegations of their own.

Similarly, Defendants cannot defeat Hannah's complaint by making conclusory statements that the conduct at issue "can be good for competition" or may constitute legal vertical arrangements. (Reply at 7.) Defendants can pursue such defenses or put forth evidence to undercut Hannah's' allegations that Peaches' actions are anticompetitive at later stages in this litigation. At this stage, Hannah's sufficiently has alleged specific actions by Peaches, along with anticompetitive effects stemming from those actions, to survive a motion to dismiss.

## II.     12(b)(1) Motion

Defendants dos not offer any reason why the Court should dismiss the state law counts for lack of federal court subject matter jurisdiction. Rather, Defendants seem to ask the Court to refuse to assert supplemental jurisdiction over the state law claims if it dismisses the federal claims. Because the Court does not dismiss the federal claims, this argument fails.

## CONCLUSION

The Court denies Defendants' motion to dismiss. The Court also denies Hannah's' motion to strike as moot.

**DATED: August 28, 2013**

                                    **ENTERED**

                                 _____

                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**