# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANNAH'S BOUTIQUE, an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 13-cv-2564 ) |
| BARBARA ANN SURDEJ, ROY SURDEJ and JEFFREY SURDEJ d/b/a PEACHES BOUTIQUE and AGNIESZKA BIALAS, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In October 2013, the parties came before the Court with differing proposals for the scope of discovery. (*See* R. 99, Joint Discovery Plan.) Defendants sought to limit the initial phase of discovery to the issue of market power and to set restrictions on third-party discovery and the number of depositions for each side. (*Id.* at 2-5.) Plaintiff, on the other hand, proposed that the parties conduct discovery on all issues simultaneously. (*Id.* at 6-7.) The Court ultimately adopted a middle-ground discovery plan that prioritized discovery on market power and allowed Defendants to move for summary judgment on the issue of market power at an early stage in the discovery process, but rejected Defendants' proposed limitations on the scope of third-party discovery and the number of depositions. (*See* R. 101.)

Since the Court's ruling, the parties have continued to argue over discovery. On December 30, 2013, Plaintiff filed a motion to compel Defendants to provide further responses to its discovery requests, which the Court granted in part and denied in part on January 29, 2014. Recently, the parties filed several additional discovery motions. Currently before the Court are

(1) Plaintiff's motion for issuance of a rule to show cause and to bar Defendants from raising certain defenses or presenting certain evidence due to Defendants' failure to comply with the Court's order on Plaintiff's earlier motion to compel (*see* R. 123); (2) Plaintiff's motion to strike or remove Defendants' designation of documents as "Confidential" and "Attorney's Eyes Only" under the Agreed Confidentiality Order (*see* R. 125); and (3) Defendants' motion to compel Plaintiff to produce documents in response to Defendants' non-market power discovery requests (*see* R. 130).[1] For the following reasons, the Court grants in part and denies in part Plaintiff's motions, and denies Defendants' motion as moot in light of Plaintiff's agreement to produce the requested documents within twenty-one days.

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow liberal discovery to assist in preparation for trial and settlement of disputes. *See Bond v. Uteras,* 585 F.3d 1061, 1075 (7th Cir. 2009). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 450 (N.D. Ill. 2006). This burden "is not satisfied by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably

---

[1] The parties also have filed two other discovery motions, which the Court does not address in this Opinion: (1) Plaintiff's motion to compel the production of Peaches Boutique's financial and ownership documents and to extend the discovery deadlines (R. 127); and (2) Defendants' motion to amend the Agreed Confidentiality Order (R. 146). The parties should be prepared to address those motions orally at the status hearing on March 26, 2014, including what, if any, dispute remains regarding the production Peaches Boutique's financial and ownership documents.

calculated to lead to the discovery of admissible evidence.'" *Osada v. Experian Info. Solutions, Inc.,* 290 F.R.D. 485, 494 (N.D. Ill. 2012) (citation omitted).

As with all discovery motions, district courts have broad discretion in deciding motions to compel. *See James v. Hyatt Regency Chicago,* 707 F.3d 776, 784 (7th Cir. 2013). A district court may grant or deny a motion to compel in whole or in part and, "similar to ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996). District courts also have broad discretion in deciding "whether and how to sanction [discovery] misconduct, for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion." *Hunt v. DaVita, Inc.,* 680 F.3d 775, 780 (7th Cir. 2012).

## ANALYSIS

I. **Plaintiff's Motion for Issuance of a Rule to Show Cause and to Bar Defenses and Evidence**

   A. **Background**

Plaintiff's motion for issuance of a rule to show cause and to bar defenses and evidence concerns Defendants' failure to comply with the Court's ruling on Plaintiff's previous motion to compel further responses to its interrogatories. Specifically, Plaintiff argues that Defendants' supplemental response to Interrogatory No. 14 of Plaintiff's First Set of Interrogatories to Defendant Surdej is deficient.[2] (*See* R. 123, Pl. Mot. for Rule to Show Cause ¶¶ 9-13.) Interrogatory No. 14 requested Defendants to

---

[2] Plaintiff's motion for issuance of a rule to show cause and to bar defenses and evidence specifically addresses Roy Surdej's interrogatory response. Because Interrogatory No. 14 to Roy Surdej mirrors Interrogatory No. 4 issued to the other Defendants and the other Defendants incorporated Roy Surdej's response to Interrogatory No. 14 into their own interrogatory response, however, the Court refers to Defendants collectively in its discussion of Plaintiff's motion.

> [i]dentify any and all contracts and/or agreements between Defendants and/or Peaches' Employees and any of the Designers and/or their Independent Sales Representatives regarding Peaches' exclusive right to sell Women's Fashion Dresses anywhere within the Chicago Market, including the date of the agreement, the terms of the agreement, the geographic scope or area of the agreement, and the length of the agreement.

(*See* Pl. Mot. for Rule to Show Cause at Ex. C, Roy Surdej's Second Supp. Interrog. Resp., at 14.) Defendants' initial response to Interrogatory No. 14 stated, in relevant part:

> [T]o provide uniqueness for its product mix and to maintain its ability to offer its customers reasonable confidence that someone else at the event that customer is attending will not be wearing the same dress, it is not uncommon for Peaches to request that a Designer from which it purchases special occasion dresses elect whether to sell to Peaches or another retailer on a going-forward basis. There is no set geographical area for such requests, which are determined on a case-by-case basis, and varies [sic] on a number of factors including, *inter alia*, the time period, the Designer, and the volume of dresses that Peaches purchases from the Designer.

(*See* R. 111-2, Roy Surdej's Initial Interrog. Resp. at 13-14.)

On January 29, 2014, the Court ordered Defendants to supplement their response to Interrogatory No. 14 in two respects. First, the Court ordered that if, as Defendants' counsel represented in court, no contracts or written agreements with designers or independent sales representatives reflecting Peaches' exclusive right to sell their dresses exist, Defendants should state that in their response to Interrogatory No. 14 and swear to and verify their responses. (*See* R. 122, Jan. 29, 2014 Hrg. Tr. at 12-13.) Second, the Court ordered Defendants to identify any oral agreements of which they are aware and provide the requested information about the agreements—"the who, when, terms, et cetera"—to the extent they could recall those details. (*Id.* at 14-15.) The Court ordered Defendants to supplement their interrogatory responses in accordance with the Court's ruling by February 12, 2014. (*Id.* at 31.)

4

B. Analysis

1. Defendants Failed to Comply with Their Discovery Obligations and the Court's Order

On February 21, 2014, after Plaintiff agreed to extend the due date for the supplemental responses, Defendants supplemented their response to Interrogatory No. 14, among others. (*See* Roy Surdej's Second Supp. Interrog. Resp. at 14-16.) Consistent with the Court's order, Defendants stated that "Peaches has never entered into a written agreement with any Designer and/or Independent Sales Representative regarding Peaches' exclusive right to sell Women's Fashion Dresses in the Chicago Market." (*Id.* at 15-16.) Defendants, however, did not verify their interrogatory responses, as Rule 33(b) requires and as the Court ordered. Nor did they fully comply with the Court's order regarding identification of Peaches' oral agreements. Defendants' supplemental response to Interrogatory No. 14 is evasive regarding with whom Peaches had such agreements and, with one exception,[3] fails to provide the details that the Court unequivocally ordered Defendants to supply about each agreement.

To begin, rather than identify all designers and independent sales representatives with whom Peaches entered oral agreements regarding Peaches' exclusive right to sell their dresses, Defendants state that "Peaches made such requests to most of the Designers for at least some lines for at least certain areas within the Chicago Market" and then include a list of examples of designers with whom it had such agreements. (*Id.* at 15.) Defendants' response-by-example is evasive and incomplete. In accordance with their discovery obligations, Defendants must

---

[3] Defendants provide some of the requested details for Peaches' exclusive-dealing agreement with one designer, Mori Lee. (Roy Surdej's Second Supp. Interrog. Resp. at 16.) Defendants state that "due to the high volume of the units Peaches ordered from Mori Lee . . . . Mori Lee elected to sell exclusively to Peaches in area [sic] roughly bordered by Interstate 88, Interstate 355, Interstate 80, and Lake Michigan." (*Id.*) Although Defendants identify the geographic scope of Peaches' agreement with Mori Lee, their response is still incomplete; Defendants also must identify the date, length, and terms of Peaches' agreement with Mori Lee, as Interrogatory No. 14 requests.

provide a *complete* list—not just examples—of designers and independent sales representatives with whom Peaches had exclusive-dealing agreements, to the extent they recall such agreements. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and *fully* in writing under oath." (emphasis added)). If the designers listed in Defendants' supplemental response are the only ones with whom they recall Peaches entering exclusive-dealing agreements, they must state so in their response.

Defendants' description of Peaches' exclusive-dealing agreements is even more evasive than their identification of the designers with whom Peaches had such agreements. Defendants acknowledge that, beginning in mid-2000, Peaches requested some form of exclusive-dealing arrangement, on a "case-by-case" basis, with "most Designers for at least some lines for at least certain areas within the Chicago Market." (Roy Surdej's Second Supp. Interrog. Resp. at 15-16.) Rather than identify the time frame, geographic scope, dress line, and other terms of Peaches' agreement with each designer, however, Defendants provide only general information about the factors that typically influence those agreements. Defendants state, for example, that "[t]he scope of Peaches' request varies by Designer and by the location of the other retailer(s)," and "the request typically does not encompass retailers with which a Designer already has an existing relationship." (*Id.* at 15.) Additionally, Defendants indicate that Peaches' requests generally depend on the number of dresses Peaches orders from a designer. (*Id.*)

This response is evasive and incomplete; providing generalized information about agreements with designers as a whole when those agreements admittedly vary on a "case-by-case" basis depending on a number of factors effectively provides no information at all about the individual agreements. *See* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *see also, e.g.,*

6

*Watkins v. Nielsen,* 405 Fed. App'x 42, 43-44 (7th Cir. 2010) (discovery responses that provided general information only and omitted requested details were non-responsive); *Ashley v. Lake County,* No. 2:06-cv-360, 2008 WL 2954975, at *3 (N.D. Ind. July 29, 2008) (defendant's failure to provide the "full scope of the information requested" violated its discovery obligations). Defendants must provide the requested details—"the date of the agreement, the terms of the agreement, the geographic scope or area of the agreement, and the length of the agreement"—for each exclusive-dealing agreement on an individual basis, to the extent they can recall those details. If Defendants do not recall some or all requested details for particular agreements, they must state that in their response, specifying the information they cannot recall for each particular agreement, and then certify their response.

Defendants raise several arguments regarding why their response to Interrogatory No. 14 is sufficient, none of which are availing. First, Defendants claim that their supplemental response includes "any additional information they could recall." (*See* R. 136, Defs. Resp. to Mot. for Rule to Show Cause at 1.) If that is the case, though, Defendants must specifically and clearly state that in their response. Defendants cannot avoid acknowledging their inability to recall the details of their individual agreements with designers by casting their response in general terms. Furthermore, Defendants' representation that they cannot recall any additional details about the oral agreements at issue is suspect. *Cf. Martin v. Bureau of Collection Recovery,* No. 10 C 7725, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) (St. Eve, J.) ("If defendant does not have documents or other information which substantiates [its] defense, it is difficult to fathom why it interposed that defense in the first place." (citation omitted)). It is difficult to believe that out of the ten designers with whom Defendants recall Peaches having exclusive-dealing agreements, Defendants cannot recall any details regarding those agreements,

with one exception, especially given that Defendants admittedly contacted designers and reminded them of their decision to sell exclusively to Peaches "on approximately 10-12 occasions." (*See* Roy Surdej Second Supp. Interrog. Resp. at 16.) Defendants, at a minimum, must have recalled at least some terms of Peaches' agreements with those designers when it contacted them to enforce the agreements.

Second, Defendants argue that Plaintiff can explore Defendants' response to Interrogatory No. 14 in greater detail through depositions and additional discovery. While this argument may bear on whether Plaintiff has suffered any prejudice from Defendants' discovery violations, it does not excuse Defendants from complying with their obligation to provide complete, non-evasive responses to Plaintiff's interrogatories in the first place. Nor does Defendants' argument that "the resources of the parties and the Court would be better served if Plaintiff would review the voluminous information that Defendants have provided over the past three months . . . and then proceed with depositions so that the Court can resolve the issue of market power" help their cause. (Defs. Resp. to Mot. for Rule to Show Cause at 3.) In this case, Defendants—not Plaintiff—are holding up discovery and consuming judicial resources by failing to provide a straight-forward response to a straight-forward interrogatory in violation of their discovery obligations and the Court's January 29, 2014 order.

Finally, Defendants suggest that the Court based its January 29, 2014 order on incomplete information. (*Id.* at 2-3.) Specifically, Defendants argue that Plaintiff had not provided the Court with Defendants' full initial response to Interrogatory No. 14, which purportedly contained "substantial information" about Peaches' exclusive-dealing agreements with designers. (*Id.*) The Court finds it surprising and telling that Defendants seek to blame their discovery violations on the Court's purported failure to consider Defendants' full response

to Interrogatory No. 14. The Court assures Defendants that it reviewed Mr. Surdej's response to Interrogatory No. 14, which Plaintiff attached as an exhibit to its previous motion to compel, *in full* before ruling on Plaintiff's motion to compel, and contrary to Defendants' argument, the Court found that Defendants' initial response lacked "substantial information" regarding Peaches' exclusive-dealing agreements with designers. The only information Defendants provided about Peaches' requests for designers to sell exclusively to Peaches is that "[t]here is no set geographical area for such requests, which are determined on a case-by-case basis, and varies [sic] on a number of factors including, *inter alia,* the time period, the Designer, and the volume of dresses that Peaches purchases from the Designer." (*See* Roy Surdej's Initial Interrog. Resp. at 14.) As explained above, responding to Interrogatory No. 14 by stating only that Peaches' individual agreements with designers varied on a case-by-case basis depending on a number of factors is evasive and incomplete. Moreover, even if Plaintiff had failed to provide the Court with complete information in its previous motion to compel—which it did not—that does not give Defendants license to disregard or re-write the Court's order as they see fit; rather, Defendants should have raised the issue with the Court during the approximately 40-minute status hearing on Plaintiff's motion to compel or during one of the two subsequent status hearings on February 5, 2014 and March 3, 2014.

### 2. Appropriate Sanctions for Defendants' Discovery Violations

Having found that Defendants' supplemental response to Interrogatory No. 14 violates Rule 33 and the Court's January 29, 2014 order, the Court must determine an appropriate sanction to impose, if any. Rule 37 authorizes the Court to impose a variety of sanctions, including prohibiting Defendants from presenting certain defenses, precluding them from introducing evidence on the matters at issue, striking their pleadings in whole or in part, staying

9

the proceedings until they comply with the Court's order, rendering a default judgment against them, or treating their failure to comply with the Court's previous order as contempt. *See* Fed. R. Civ. P. 37(b)(2)(a), (d)(3). Moreover, instead of or in addition to these sanctions, the Court must require Defendants, their attorneys, or both to pay the reasonable expenses, including attorney's fees, caused by their failure to provide a complete, non-evasive response to Interrogatory No. 14 "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

The sanction the Court imposes must be "proportionate to the circumstances surrounding [Defendants'] failure to comply with discovery rules." *Rice v. City of Chicago,* 333 F.3d 780, 784 (7th Cir. 2003) (quoting *Melendez v. Illinois Bell Tel. Co.,* 79 F.3d 661, 672 (7th Cir. 1996)). Among the factors the Court should consider in its analysis of which sanctions to impose are "the frequency and magnitude of [Defendants'] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants," and the possible merits of the plaintiff's suit or, in this case, Defendants' defenses. *Id.* (quoting *Williams v. Chicago Bd. of Edu.,* 155 F.3d 853, 857 (7th Cir. 1998)).

Plaintiff argues that, as a sanction for Defendants' discovery violations, the Court should bar Defendants from raising any oral exclusive-dealing agreements or arrangements as a defense or legal justification for their conduct, preclude Defendants from introducing any evidence of exclusive-dealing agreements or arrangements, and issue a rule to show cause as to why the Court should not hold Defendants in contempt for failing to comply with the Court's January 29, 2014 oral ruling on Plaintiff's previous motion to compel. (*See* Pl. Mot. for Rule to Show Cause at 4.) Although Defendants' failure to provide a complete, non-evasive response to Interrogatory No. 14 even after the Court ordered them to do so is certainly sanctionable, the Court declines to

impose the harsh sanctions Plaintiff proposes at this time. Fact discovery is ongoing, and Plaintiff has yet to depose Defendants. Accordingly, any prejudice Plaintiff has suffered to date from Defendants' misconduct is minimal. *See Howard v. Sweetheart Cup Co.,* No. 00 C 648, 2001 WL 721765, at *3 (N.D. Ill. June 27, 2001) (declining to hold the defendant in contempt, preclude the defendant from raising certain arguments at trial, or enter a default judgment where the plaintiff failed to identify the harm she suffered from the defendant's discovery violations, other than the additional time and effort she expended obtaining the requested discovery). Furthermore, the Court will extend the discovery deadlines currently in place to minimize any prejudice to Plaintiff in the future,[4] and it will require Defendants and their attorneys to pay Plaintiff's reasonable expenses, including attorney's fees, incurred in bringing its motion for issuance of a rule to show cause and to bar defenses and evidence. *See* Fed. R. Civ. P. 37(d)(3). Despite Defendants' cavalier attitude toward discovery to date, the Court will give them one more chance to comply with their discovery obligations and the Court's order before imposing more severe sanctions. If Defendants continue to disregard their discovery obligations, Plaintiff may renew its motion for issuance of a rule to show cause and to bar defenses and evidence at the appropriate time.

Accordingly, the Court grants in part and denies in part Plaintiff's motion for issuance of a rule to show cause and to bar defenses and evidence. (R. 123.) Defendant Surdej shall supplement and verify his response to Interrogatory No. 14, consistent with this Opinion, by April 1, 2014. Similarly, Defendants Barbara Surdej, Jeffrey Surdej and Agnieszka Bialas shall supplement and verify their responses to Interrogatory No. 4 by April 1, 2014. With respect to Plaintiff's fees and expenses, Plaintiff shall provide its billing records and other evidence establishing its attorney's fees and expenses to Defendants and their counsel, pursuant to Local

---

[4] The Court will set new fact and expert discovery deadlines at the status hearing on March 26, 2014.

Rule 54.3(d)(1)-(3), by April 15, 2014. The parties shall meet and confer regarding Plaintiff's fee request by April 25, 2014, and pursuant to Local Rule 54.3(e), they shall file a joint statement regarding any fees or expenses that remain in dispute after their meet and confer by May 5, 2014.

II. **Plaintiff's Motion to Strike or Remove Defendants' Designation of Documents under the Agreed Confidentiality Order**

   A. **Background**

Plaintiff next moves to strike or remove Defendants' designation of documents as "Confidential" or "Attorney's Eyes Only" under the Agreed Confidentiality Order ("Confidentiality Order") and its Modification. (*See* R. 125, Pl. Mot. to Strike.) Under the Confidentiality Order, the parties may designate discovery materials as "Confidential-Subject to Protective Order" if the materials include any of the following categories of "Confidential Information:"

> (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) pricing and quantity information between either party and its vendors; (d) personal identity information which includes social security numbers, driver's license numbers, or financial account numbers; (e) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (f) personnel or employment records of a person who is not a party to the case.

(*See* R. 53, Conf. Order § 2.) Additionally, the Modification to the Confidentiality Order allows the parties to designate information as "Confidential-Attorney's Eyes Only" if the designating party "determines in good faith that it contains non-public information of a competitively or commercially sensitive, proprietary, or financial nature, trade secrets, information that gives the Designating Party a competitive advantage, or involves or implicates the privacy interests of persons who are not a party to this lawsuit." (*See* R. 108, Modification § 1.) The Confidentiality Order provides that "[t]he designation of a document as Confidential Information is a certification by an attorney . . . that the document contains Confidential Information as defined in this order." (Conf. Order § 3(b).)

Section 9 of the Confidentiality Order provides the procedures a party must follow to challenge the designation of material as Confidential Information. (*Id.* § 9.) Under Section 9, the challenging party first must meet and confer with counsel for the designating party, "explain[ing] the basis for its belief that the confidentiality designation was not proper and . . . giv[ing] the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation." (*Id.* § 9(a).) If the parties cannot resolve the dispute themselves, the challenging party may then file a motion with the Court challenging the disputed designations. (*Id.* § 9(b).) The movant must identify the challenged materials and "set[] forth in detail the basis for the challenge" in its motion. (*Id.*) In addition, the movant must submit a declaration affirming that it complied with the meet and confer requirements of the Confidentiality Order. (*Id.*) The Order specifies that "[t]he burden of persuasion in any such challenge proceeding shall be on the designating party." (*Id.*)

On January 21, 2014, Defendants produced 5,475 documents in response to Plaintiff's document requests. (*See* Pl. Mot. to Strike ¶ 6.) According to Plaintiff, Defendants designated "nearly every single document as either Confidential or Attorneys' Eyes Only," even though "[m]any, if not most, of these documents do not contain any of the protected information outlined in the [Confidentiality] Order or Modification thereto." (*Id.*) On January 24, 2014, Plaintiff's counsel notified Defendants of his objection to the "shotgun" nature of Defendants' designations and requested that the parties meet and confer to resolve the issue. (*Id.* ¶ 7.)

On January 30, 2014, after Plaintiff's counsel finished reviewing Defendants' production, he provided Defendants with a list of the specific documents for which Plaintiff disputed Defendants' confidentiality designations. (*See* Pl. Mot. to Strike at Ex. 5.) Plaintiff challenged

13

292 documents designated as "Confidential" that, according to Plaintiff, "do not contain information protected from disclosure under statute, reveal trade secrets, pricing and quantity information, personal identity information, income tax returns, W-2 or 1099 forms, or personnel or employment records of a person not a party to the case." (*Id.* at 1 & Ex. A.) Plaintiff also challenged six documents designated as "Attorney's Eyes Only" that it contends "do not contain non-public information of a competitive or commercially sensitive nature, proprietary or financial nature, trade secrets, information which would give competitors an advantage, or involve privacy concerns of non-parties." (*Id.* at 1 & Ex. B.)

Defendants did not respond substantively to Plaintiff's challenges to their document designations. Rather, Defendants' counsel emailed Plaintiff's counsel stating:

> If there are any confidentiality designations you believe are interfering with your ability to prosecute the case, please let us know and we will work with you on those designations. Otherwise, the protective order should provide you with the flexibility to use the designated documents as you need to.

(*See* Pl. Mot. to Strike at Ex. 6.) This response, to say the least, is not helpful.

On February 3, 2014, the parties met and conferred in person about the document designations, among other things. (*See* Pl. Mot. to Strike ¶ 12.) Defendants again stated that they would not remove the challenged designations unless Plaintiff could explain how the designations impeded its prosecution of the case. (*Id.* ¶ 13.) Additionally, Defendants expressed concern that the challenged documents might end up in the newspaper if they removed the confidentiality designations and proposed that the parties expand the Confidentiality Order to prevent public disclosure of documents produced in the litigation.[5] (*Id.*) Plaintiff's counsel refused to agree to the proposed expansion. Following the parties' meet and confer, Plaintiff's

---

[5] On March 20, 2014, Defendants filed a motion to amend the Confidentiality Order to prevent public disclosure of any documents produced in this litigation even if the parties have not designated the documents as "Confidential" or "Attorney's Eyes Only." (*See* R. 146.) The parties should be prepared to address Defendants' motion during the status hearing on March 26, 2014.

counsel wrote to Defendants' counsel two more times regarding Defendants' purportedly improper document designations, but he received no response to his correspondence. (*Id.* ¶¶ 14-16.) Plaintiff subsequently filed this motion to strike or remove the challenged confidentiality designations.

> **B.** **Analysis**

Defendants, notably, do not contend that their confidentiality designations were proper for the vast majority of the documents at issue. Indeed, Defendants admit that they can remove the confidentiality designations for at least some of the challenged documents, although they do not specify to which documents they are referring. (*See* R. 138, Defs. Resp. to Mot. to Strike at 3-4.) Rather than defend their confidentiality designations, Defendants argue that Plaintiff's motion to strike the designations is improper. Specifically, Defendants argue that Plaintiff failed to comply with the procedures outlined in Section 9 of the Confidentiality Order for challenging a party's confidentiality designations. (*See id.* at 1-3.) The Court disagrees.

In accordance with Section 9, Plaintiff identified the specific documents for which it challenged Defendants' designations by Bates-range, and it explained the basis for its challenge to those designations, namely that the documents do not contain any "Confidential Information" or "Attorney Confidential Information," as those terms are defined in the Confidentiality Order and Modification. Furthermore, after notifying Defendants that it objected to their apparent "shotgun" approach to the designations, which resulted in Defendants designating nearly every document as "Confidential," Plaintiff narrowed the number of documents it challenged to less than 300. Plaintiff, therefore, complied with its meet-and-confer obligations under Section 9 of the Confidentiality Order.

Defendants, on the other hand, did not. Defendants provided no substantive response to Plaintiff's letter regarding the challenged designations. Instead, Defendants attempt to shift the burden to Plaintiff to identify the confidentiality designations that were interfering with Plaintiff's prosecution of the case. (*See* Pl. Mot. to Strike at Ex. 6.) Neither the Confidentiality Order nor the Modification provides a basis for Defendants to impose this burden on Plaintiff, and Defendants do not have the authority to unilaterally amend the Confidentiality Order to their liking. Only the Court may amend the Confidentiality Order and Modification. If, as Defendants contend, they believe that Plaintiff will misuse certain documents to "harass or embarrass the Defendants or for some other purposes unrelated to the representation of Plaintiff," their propose recourse was to seek protection from the Court, not to disregard their obligations under the Confidentiality Order. *Cf. Scott v. Chuhak & Tecson, P.C.,* 725 F.3d 772, 779 (7th Cir. 2013) ("If the estate believed that [the defendant] was not complying with the spirit of the discovery order, the estate should have alerted the district court. By claiming in the course of its challenge to the discovery sanctions that [the defendant] engaged in bad faith conduct prior to the estate's violation of the protective order, the estate is treading dangerously close to a self-help argument.").

Accordingly, the Court rejects Defendants' objections to Plaintiff's motion to strike. The Court orders Defendants to respond substantively to Plaintiff's designation challenges on a document-by-document basis by April 4, 2014. The parties shall meet and confer regarding any documents that remain in dispute by April 15, 2014. If the parties cannot resolve the remaining disputes, Plaintiff may renew its motion to strike Defendants' confidentiality designations at that time.

**III.     Defendants' Motion to Compel the Production of Non-Market Share Documents**

On November 1, 2013, Defendants served on Plaintiff thirty-eight requests for documents related to issues other than market power. (*See* R. 130, Defs. Mot. to Compel at Ex. 1.) Plaintiff still has not served its responses, which are now three-months overdue. (*See id.* ¶ 7.) As a result, Defendants move to compel Plaintiff to produce the requested documents.

In response to Defendants' motion to compel, Plaintiff states that it can produce the requested documents within twenty-one days. (*See* R. 142, Pl. Resp. to Defs. Mot. to Compel ¶ 6.) In accordance with Plaintiff's agreement, the Court orders Plaintiff to produce the requested documents by April 15, 2014, and denies Defendants' motion to compel as moot.

## CONCLUSION

For the reasons explained above, the Court grants in part and denies in part Plaintiff's motion for issuance of a rule to show cause and to bar defenses and evidence (R. 123) and Plaintiff's motion to strike or remove Defendants' designation of documents under the Agreed Confidentiality Order (R. 125), and denies Defendants' motion to compel (R. 130) as moot in light of Plaintiff's agreement to produce the requested documents within twenty-one days. Additionally, the Court notes that the continuous discovery disputes in this case have become problematic. Before filing any additional discovery motions, the parties must meet and confer *in person* and certify that they have done so.

**DATED: March 25, 2014**                                    **ENTERED**

_____
AMY J. STUEVE
U.S. District Court Judge